Hibson, J.
Most of the points which have been made in this cause have so little to do with the merits, that I shall confine the opinion of the court to the only one which goes to the root of the liability of the defendants below.
The action is brought on an administration bond, giyen by an administrator and his surety; and the breach of the condition, as assigned, is a devastavit, by paying debts out of their order. It was admitted at the trial, that the administrator had paid, in discharge of debts in their proper order, a considerable sum over and above the amount of the personal estate; and that there had been a devastavit of the personal assets was not pretended. It appeared, however,- that the intestate was indebted at his death in a large sum to the Westmoreland Bank, on three promissory notes, for which the administrator was personally liable as an indorser; and for these, he confessed two judgments, (specially saving his own personal liability,) on which the real estate of the intestate was sold, and the proceeds were paid over to the bank, which would have received nothing if this part of the estate had been brought into a course of administration, and applied to the payment of the debts in their order. It will, therefore, be perceived, that the point for consideration is, the liability of an administrator and his surety on their bond, for the ac.t of the former, in confessing a judgment, on which the real estate of the intestate is sold, and applied to the payment of debts which are posterior in order to those which would have been paid, had the property been brought into a course of administration.
At the common law, there is a plain and a substantial distinction between assets in the hands of the executor, and assets in the hands of the heir. The first consist of all the chattels of which the testator died possessed, whether real or personal; the second consist of the lands, and other real estate, in respect of which the heir -is, in particular cases, liable for the.debt of his ancestor, but liable only where the lands have been expressly charged by the ancestor, and then the remedy is by action against the heir, without having recourse in any shape to the executor. In Pennsylvania, lands are, in all cases without distinction, assets for the payment of debts; and the remedy, instead of being against the heir, is exclusively against the executor; under a judgment against whom the lands are levied and sold, jiigt as if they were in the hands of the executor; but they are nevertheless still assets in the hands of the heir. The plea of plene administravit is as fully made out here as in England, by proof that the executor has administered all the personal assets; and where that plea is found against the plaintiff, he may, nevertheless, take judgment against the land as of course, being a matter with which the executor has nothing to do. This would show conclusively (if anything were wanting to show it,) that the real estate is not, in the first instance, under the control of the executor. He is not entitled to the possession of it; he cannot bfe *443 charged with it, or the profits of it in-the inventory, or in the settlement of his administration account; he is not entitled to a credit for money laid out in improving it, or keeping it in repair; nor is lie liable for permissive waste in respect of it; in short, it does not concern him in any way whatever. Now, at the common law, nothing is assets in the hands of an administrator that would not be equally so in the hands of an executor. How far then has this been altered by our Acts of Assembly? The bond directed to be given by the Act of the 17th of dlpril, 1794, is nearly word for word the same as that which, in England, is required' by the 21 H. 3. c. 3. and the 22 & 23 Car. 2. c. 10.; being conditioned for the making of a true and perfect inventory of the goods, chattels, and credits which shall come to the hands, possession, or knowledge of the administrator, or of any person for him; for exhibiting the same into the register’s office before a day certain; for well and truly administering according to law, the same goods, chattels, and credits, and all other the goods, chattels, and credits of the deceased at the time of his death,which at anytime after shall come to the hands or possession of the said administrator, or into the hands or possession of any person for him; for making a just and true account of his administration by a day certain; for paying to such persons respectively as the Orphans’ Court by its decree may appoint, all the residue of the said goods, chattels, and credits, after the allowance of the administration account by the same court; and lastly for rendering the letters of administration unto the.Orphans’.Court on probate of a will by the deceased, in case any such should appear. At the time then when the form of the bond on which this suit is* brought was directed, it was supposed that the administrators would have nothing to do with the real assets, except in the particular case of money raised by sale or mortgage of the real estate under a decree of the Orphans’ Court to supply a deficiency of the personal assets for payment of debts, and the maintenance of children, as pointed out in the nineteenth section of the same act: and the universal understanding as to this, is shown by the supplementary act of the 26th March, ISOS, which requires a separate and distinct security to be given for the administration of money thus raised; and it is clear, therefore, that the legislature th&ught the original act did not extend to it. It would be a strange construction then, which should declare the administration bond to be a security where the real assets are only consequentially affected-by the act of the administrator, and to be no security where those assets are brought within the immediate contract. There is only one other cáse in which an administrator can have the administration of real assets; and that arises, where the lands have been sold on an execution for a sum more than sufficient to satisfy the liens; in which case the surplus is demandable by the administrator for payment of the other debts where there are any: and this case seems not to have occurred to the legislature as one requiring provision, for by using the words *444 of the English statutes, they seem to have restrained the security of the bond, to the administration of “ the goods, chattels, and credits of the said deceased at the time of his death.” Now I apprehend it to be impossible by any equitable construction, to stretch the words beyond the letter against a surety who knew the exact extent of the responsibility which he contracted, according to the letter of his obligation, and who could know it by no diligence, provided it were to be measured by any other standard than the letter.
To the case of a sale by decree of the Orphans’ Court, they undoubtedly cannot; for the legislature has by subsequent enactment, declared exactly what it meant; and this subsequent enactment was doubtless produced by the actual state of the practice under the original act, as settled by the common opinion of the profession.
This then being the nature of real assets in Pennsylvania, and the mode of getting at them as they exist in the hands of the heir, and also the extent of the security afforded by an administration bond, — on what ground is it to be supposed that the confession of a judgment on which the land is afterwards sold, and the price applied to the payment of a debt out of its order, is a forfeiture of the penalty? That the confession is voluntary, cannot, if the debt be a just one, vary the legal consequences of the act, as the administrator could not by a resort to fair means, prevent a judgment from being rendered adversely: he could but plead plene cidministravif, and that being found for him, the adverse party would have a right to call for a judgment de terris. I think it clear then that those who prosecute this suit in the name of the Commonwealth, have no remedy on the administration bond. Whether they have any other remedy, I pretend not to determine. One remedy they undoubtedly had, but of which they neglected to avail themselves at the proper season. An application to the Common Pleas at the return of the execution w ould have produced a detention of the money in court, till judgments de terris should have been obtained by the other creditors, in case they had not been obtained before; after which it would have been distributed according to the grade of the several debts, as established by the act of assembly. But the matter in hand is, not whether they have any, or what remedy, but whether they can for this cause, maintain an action on the administration bond; and the court below having put the case to the jury, as if the real estate were personal assets, and therefore within the security of the bond, - fell into an error which-is fatal to the judgment.
Judgment reversed..
Tilghman, C. J. who was absent in consequence of indisposition, gave no opinion.